# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BRAD T. ASCHER,**

    Plaintiff,

  v.                                     Case No. 22-CV-1524-SCD

**MARTIN J. O'MALLEY,**
  *Commissioner of the Social Security Administration,*

    **Defendant.**

## DECISION AND ORDER

    Brad Ascher applied for social security benefits based in part on mental limitations stemming from attention deficit/hyperactivity disorder. After a hearing, an administrative law judge denied the claim for benefits, finding that, although Ascher had limitations in concentrating, persisting, or maintaining pace—CPP in social security lexicon—he could perform certain jobs that involved simple, routine, and repetitive tasks. Ascher seeks judicial review of that decision, arguing that the ALJ failed to adequately account for his CPP limitations. Because substantial evidence supports the ALJ's finding that Ascher retained the mental ability to perform simple, routine, and repetitive tasks, I will affirm the denial of disability benefits.

## BACKGROUND

    In 2020, Ascher applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively, claiming that he became disabled early that year due to various physical and mental impairments.

I.	Medical Background

Ascher claims he has suffered from mental health issues his entire life. *See* R. 369.[1] He reported being bullied in school and receiving special educational services for attention and learning issues. Despite those struggles, he was able to graduate from high school and complete one year of technical college. Ascher worked for many years as a self-employed contractor doing home repairs and remodeling. But he reported struggling with paperwork and making estimates due to poor focus and attention. In early 2019, Ascher got a new job as a cabinetmaker and installer. R. 51, 279, 508. It didn't last long; he was fired after only four months for making too many mental mistakes. R. 248, 268–69, 273, 279, 501, 806–08.

Around that same time, Ascher began seeing Heidi Derbick, APNP, for behavioral health therapy. Ascher told Derbick that he struggled with depression, lack of focus, concentration problems, and an inability to complete tasks. R. 512–18. Derbick diagnosed ADHD (primarily inattentive type), moderate depression (single episode), and generalized anxiety disorder. Ascher was already taking Ritalin, but given his reported concentration issues, Derbick increased the dosage from 15 mg to 20 mg. At his follow-up appointment, Ascher reported that the change in medication really helped him with focus and concentration, so Derbick did not make any changes to his treatment regimen. R. 505–11.

A few months later, Ascher stopped taking his Ritalin because he felt it wasn't helping anymore. R. 494–98. He also told Derbick that he didn't want to continue taking stimulant medication, and he reported using CBD oil instead. However, Ascher asked to restart the medication a few weeks later, and Derbick prescribed extended-release Ritalin 20 mg. R. 487–

---

[1] The transcript is filed on the docket at ECF No. 11-2 to 11-9.

93. Ascher stated that, after just three days, he felt the medication was working well; his mind was not jumbled, he could focus, and he was not overthinking.

Ascher continued to see Derbick throughout 2019, 2020, and 2021. *See* R. 472–77, 631–36, 645–50, 726–38, 741–45, 811–16. During those appointments, Derbick did not note any issues with concentration or attention. Ascher reported that the Ritalin was effective, and he was doing well overall. In June 2021, Ascher told Derbick that he still lost focus and had trouble finishing tasks. R. 735. Derbick increased Ascher's Ritalin dosage to 30 mg. R. 736. At a follow-up appointment in December 2021, Ascher reported that the increased dosage helped with focus and concentration. R. 813. Derbick continued the same medication. R. 814.

Meanwhile, in January 2020, Ascher underwent a cognitive screening after reporting increased memory issues to his primary care provider. *See* R. 651–53. The depression screen was indicative of severe depression, but the cognitive screen was mixed. For example, testing revealed mild errors in attention (counting backward from 100 by 7s) and delayed recall (remembering three words after a few-minute delay) and normal results in other areas.

Ascher also participated in individual psychotherapy. *See* R. 562–75. The therapy sessions focused mainly on Ascher's relationship issues with his girlfriend and his care for his teenage daughter. At the initial session in June 2020, Ascher presented with restless motor activity and an anxious affect. R. 574. However, he was appropriately dressed, had normal speech and mood, demonstrated logical and well-organized thought content, and had good memory, average intelligence, and fair judgment. The psychotherapist did not note any concentration issues.

In December 2021, Ascher appeared for a consultative psychological examination with Steve Krawiec, PhD. *See* R. 806–09. Ascher reported severe attention deficit, short-term

3

memory issues, and difficulty completing tasks. R. 806. He told Dr. Krawiec that his Ritalin medication helped, estimating that it provided about thirty percent relief of his symptoms. R. 806–07. During the mental status exam, Ascher was oriented, his remote memory and fund of information seemed grossly intact, and he did well on arithmetic computation. R. 807. He struggled with delayed recall, but his attention and concentration ability was generally adequate for following and participating in the ongoing conversation, and he did well on a serial 2s task. Dr. Krawiec diagnosed ADHD and social anxiety disorder. R. 808. He indicated that Ascher's attention difficulty could possibly interfere with things like remembering and applying information; concentrating, persisting, and maintaining pace; and understanding things.

## II. Procedural Background

Ascher applied for social security benefits in September 2020. R. 14, 223–24. He alleged that he became disabled on January 1, 2020, due to neck and shoulder issues, rheumatoid arthritis, fibromyalgia, anxiety, nerve pain, arthritis in his feet and hands, ADHD, and pain in his back, knees, and elbow. R. 223–24, 276–83. With respect to his mental health, Ascher asserted that he had difficulty remembering, completing tasks, concentrating, understanding, following directions, and getting along with others. R. 287–98. But he also reported no problems with personal care, he cooked his own meals, he performed household chores, he drove, he shopped in stores, he liked to fish, hunt, and collect antiques, and he visited with friends a few times a week.

The state agency charged with reviewing the applications on behalf of the Social Security Administration denied Ascher's claim initially and upon his request for reconsideration. *See* R. 71–106. Deborah Pape, PhD, reviewed Ascher's mental health records

initially and found that his depression, anxiety, and ADHD were not severe impairments. R. 74–75, 80–81. Jason Kocina, PsyD, the reviewing psychologist at the reconsideration level, found that Ascher's mental impairments were severe but not disabling. R. 87–88, 99–100. Specifically, Dr. Kocina found that Ascher had no limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself.[2] With respect to sustained concentration and persistence, Dr. Kocina found that Peterson was moderately limited only in his ability to carry out detailed instructions and work in coordination with or in proximity to others without being distracted by them. R. 91–93, 103–05. Given those CPP limitations, Dr. Kocina believed that Ascher should avoid skilled or detailed work but could initiate, sustain, and complete one- to two-step tasks on a consistent basis at an adequate pace in a competitive environment.

After the state agency denial, Ascher had a hearing before an ALJ. *See* R. 40–75. Ascher testified that he previously worked in construction and as a cabinetmaker. R. 45–51. However, he said couldn't return to those jobs due to constant pain and mental health issues. R. 51–57. Ascher did say that he spent about fifteen hours a week buying items at rummage sales and reselling them online. R. 45–48. As for mental health treatment, Ascher said he was seeing a therapist and taking Ritalin. R. 54–56. He claimed that, despite treatment, he still had difficulty concentrating, remembering, paying attention, and staying focused. But he also reported shopping in stores (for an hour or so), going to rummage sales, no issues with self-

---

[2] These four areas of mental functioning are known as the "paragraph B" criteria. The paragraph B criteria are measured on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).

5

care, preparing his own meals, performing household chores, and thrifting with a close friend. R. 56–58.

Edward Pagella testified at the hearing as a vocational expert. R. 62–69. Pagella said that a hypothetical person with Ascher's vocational profile could not perform any of his past jobs if he were limited to a restricted range of light exertional work, including only simple, routine, and repetitive tasks and simple work-related decisions. R. 63–64. However, Pagella said that person could perform unskilled, light jobs such as a packer, an assembler, and a routing clerk. R. 64.

In June 2022, the ALJ issued a written decision denying Ascher's disability applications. *See* R. 11–39. He considered the applications under 20 C.F.R. §§ 404.1520(a) and 416.920(a), which set forth a five-step process for evaluating DIB and SSI claims. *See* R. 14–33. At step one, the ALJ determined that Ascher had not engaged in substantial gainful activity since his alleged onset date, January 1, 2020. R. 17. The ALJ determined at step two that Ascher had six severe impairments: fibromyalgia, rheumatoid arthritis, carpal tunnel and cubital tunnel syndromes bilaterally, depression, anxiety, and ADHD. R. 17–18. At step three, the ALJ determined that Ascher did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 18–20. The ALJ found that Ascher had a mild limitation in understanding, remembering, or applying information and a moderate limitation in each of the other three paragraph B criteria.

The ALJ next assessed Ascher's residual functional capacity—that is, his maximum capabilities despite his limitations. *See* 20 C.F.R. §§ 404.1545(a) and 416.945(a). The ALJ

determined that Ascher could perform a restricted range of light exertional work. R. 21. With respect to mental limitations, the ALJ found that Ascher could perform simple, routine, and repetitive tasks; could perform simple work-related decisions; could occasionally interact with co-workers and the public; and could frequently interact with supervisors. In assessing that RFC, the ALJ considered Ascher's subjective allegations about his impairments, the objective medical evidence, and the prior administrative medical findings and medical opinions. *See* R. 21–30. The ALJ determined that Ascher's statements concerning the intensity, persistence, and limiting effects of his mental impairments were inconsistent with his overall good functioning on examination, his reported benefit from medication, and his proclaimed activities. R. 25–28. As for the opinion evidence, the ALJ found Dr. Kocina's prior administrative medical findings somewhat persuasive and found unpersuasive the medical opinions of Dr. Krawiec. R. 29–30.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Ascher was unable to perform any of his past relevant work. R. 31. Relying on the vocational expert's testimony, the ALJ determined at step five that there were jobs that existed in significant numbers in the national economy (e.g., as a packer, an assembler, and a routing clerk) that Ascher could perform. R. 31–33. Based on the step-five finding, the ALJ determined that Ascher was not disabled from his alleged onset date through the date of the decision. R. 33.

The Social Security Administration's Appeals Council subsequently denied Ascher's request for review, R. 1–7, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In December 2022, Ascher filed this action seeking judicial review of the Commissioner's decision denying his claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 7, 8. Ascher filed a brief in support of his disability claim, ECF No. 18; the Commissioner filed a brief in support of the ALJ's decision, ECF No. 26; and Ascher filed a reply brief, ECF No. 31.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, the court must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the

claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Ascher challenges only the ALJ's assessment of his CPP limitations, arguing that substantial evidence does not support the finding that he could perform simple, routine, and repetitive tasks. He contends that the ALJ cherry-picked evidence to support his assessed mental RFC while ignoring evidence that supported a further reduction in his ability to maintain a consistent and productive pace. He further contends that the ALJ erred in not limiting him to one- to two-step tasks, as found by Dr. Kocina, the state-agency reviewing psychologist.

### I. The ALJ Did Not Engage in Impermissible Cherry-Picking

Ascher insists that the ALJ failed to mention his struggles on the serial 7s and delayed recall tests during the January 2020 cognitive assessment. Although an ALJ need not mention every piece of evidence in the record, he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted). The ALJ here explicitly considered the cognitive assessment in his decision, noting that the cognitive outcomes screen revealed a mild impairment. R. 26 (citing Exhibit 8F/28). While the ALJ did not mention any specific exam findings, Ascher fails to explain why his performance on the serial 7s and delayed recall tests should have resulted in a more restrictive RFC. Ascher botched the first subtraction from 100, but his answers from that erroneous starting point were correct. *See* R. 652–53. Likewise, Ascher recalled two of the three words after a short delay and getting

9

cues. Aside from the cognitive assessment, Ascher does not identify any other evidence the ALJ supposedly ignored. The ALJ discussed the objective medical evidence in detail—including the evidence that supported Ascher's alleged mental limitations—and acknowledged that Ascher had a moderate limitation in concentration and some issues with memory. The ALJ therefore did not engage in impermissible cherry-picking.

**II.    Substantial Evidence Supports the Mental RFC Assessed by the ALJ**

Ascher also argues that the ALJ erred in evaluating the medical opinion evidence. He specifically takes issue with the ALJ's finding that he could perform simple, routine, and repetitive tasks, suggesting that the RFC must mirror at least one of the medical opinions in the record. However, determining a claimant's RFC "is a matter for the ALJ alone . . . to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)); *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the social security regulations require ALJs to consider opinion evidence when making this determination, *see* 20 C.F.R. §§ 404.1520c, 416.920c, they don't need "to rely entirely on a particular physician's opinion," *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Indeed, the Seventh Circuit has held that an ALJ does not impermissibly "play doctor" when he rejects the opinion of the only psychologist in the case, as the ALJ partially did here. *See Simila v. Astrue*, 573 F.3d 503, 514–15 (7th Cir. 2009) ("Although another psychologist's opinion would have augmented the ALJ's analysis, neither the regulations nor our prior decisions require the ALJ to rely on such specific evidence to rebut a nontreating physician."); *Fanta v. Saul*, 848 F. App'x 655, 658–59 (7th Cir. 2021) (rejecting the plaintiff's argument as "meritless").

The ALJ here sufficiently grounded his RFC finding in the objective medical evidence, Ascher's reported activities, and the prior administrative medical findings and medical opinions. The ALJ discussed Ascher's psychiatric care with Nurse Derbick, the behavioral health specialist. The ALJ accurately observed that Ascher consistently reported that he was doing well overall and that Ritalin was effective in managing his ADHD symptoms. R. 26 (citing Exhibits 8F/10, 24; 10F/8). The ALJ also observed that Derbick increased the Ritalin dosage only one time during the relevant period, and Ascher reported improved focus and concentration after that adjustment. R. 26 (citing Exhibits 11F/4; 17F/3). Lastly, the ALJ noted that Ascher's mental status exams with Derbick were overwhelmingly normal, with no documented issues with attention or concentration. R. 26 (citing Exhibits 8F/10, 25; 10F/8; 11F/4; 17F/3).

The ALJ discussed other objective mental health evidence. For example, the ALJ noted Ascher's normal mental status exams during his psychotherapy sessions, and the cognitive assessment showing only a mild impairment. R. 26 (citing Exhibits 7F/25; 8F/28). Also, the ALJ described in detail the findings of the December 2021 consultative exam with Dr. Krawiec, including Ascher's report that Ritalin improved his ADHD symptoms by thirty percent and his successful performance on memory tasks, arithmetic computation, and serial 2s (but poor performance with delayed recall and mixed results on the proverb task). R. 26 (citing Exhibit 16F). The ALJ also noted that Dr. Krawiec believed Ascher's attention and concentration abilities were generally adequate for following and participating in ongoing conversation.

Ascher takes issue with the ALJ's reliance on his mental status exams, suggesting that his ability to pay attention during a short doctor visit is not indicative of his ability to maintain

the concentration required for full-time employment. That may be true in certain cases. But the regulations permit ALJs to consider objective observations made by medical practitioners in a clinical setting. *See* 20 C.F.R. §§ 404.1513(a)(1), 404.1529(c)(2), 416.913(a)(1), 416.929(c)(2). Aside from the cognitive assessment discussed above, Ascher does not allege that the ALJ ignored or misstated any exam findings. Nor does he identify any objective findings demonstrating that he had additional mental limitations not already included in the RFC assessment. And the ALJ did not rely solely on the mental status exams.

The ALJ also based his RFC assessment on Ascher's reported activities. The ALJ noted that, during the relevant period, Ascher worked part-time installing cabinetry and buying and reselling items. R. 27 (citing Exhibits 4E; 7E; 10F/8; Hearing Testimony). The ALJ also noted that Ascher was able to tend to his personal care and engage in daily activities like shopping in stores and online, driving, performing household chores, and preparing simple meals. R. 27 (citing Exhibits 4E; 7E; 15F; 16F; Hearing Testimony). The ALJ explained that, while those activities did not equate directly to the ability to perform full-time work, they were at least partially inconsistent with Ascher's allegations of disabling mental symptoms. Ascher concedes that the ALJ was entitled to consider such evidence when fashioning his RFC, and he does not allege that the ALJ exaggerated his daily activities.

Finally, the ALJ considered the opinion evidence. Dr. Kocina, the reviewing psychologist at the reconsideration level, found that Ascher could learn, understand, and remember simple one- to two-step tasks; could initiate, sustain, and complete those tasks; and could respond to routine changes in an unskilled, competitive work environment. R. 93, 105. The ALJ determined that Dr. Kocina's findings were somewhat persuasive, but he concluded that the assessed RFC adequately accounted for Dr. Kocina's concerns. R. 29–30 (citing

12

Exhibits 5A; 8A). According to the ALJ, Ascher's activities, reported benefit from medication, and good mental status exams confirmed his ability to perform simple, routine, and repetitive tasks. R. 30 (citing Exhibits 4E; 8F; 10F/8; 16F; 17F; Hearing Testimony). The ALJ did not find persuasive the opinions of Dr. Krawiec, the consultative psychological examiner. R. 30 (citing Exhibit 16F). The ALJ determined that Dr. Krawiec's opinion that Ascher's attention difficulty "could possibly" interfere with certain tasks was vague and equivocal. The ALJ also concluded that, although Ascher had limitations in the areas identified by Dr. Krawiec, his limitations did not preclude simple, routine, and repetitive work.

Ascher maintains that the ALJ erred in rejecting Dr. Kocina's limitation to simple, one- to two-step tasks. He accuses the ALJ of addressing only the reviewing psychologist's concentration limitation while ignoring his limitation on persistence and pace. But Dr. Kocina did not make any separate or specific persistence or pace findings. He determined that Ascher was not significantly limited in his ability to carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 92, 104. Dr. Kocina's bottom-line CPP limitation also did not carve out a distinct persistence or pace limitation, finding instead that Ascher could initiate, sustain, and complete one- to two-step tasks "*on a consistent basis at an adequate pace in a competitive work environment*." *Id.* (emphasis added). In other words, persistence and pace would not pose a problem if the tasks were simple and involved only a few steps. The ALJ appears to have followed Dr. Kocina's lead and implicitly found that

13

Ascher could persist with simple, routine, and repetitive tasks. Ascher does not identify any evidence suggesting that he couldn't keep up in that work environment.

Ascher also accuses the ALJ of deviating from Dr. Kocina's CPP limitation without explanation. The ALJ, however, cited three reasons why he thought Ascher was *slightly* more capable than Dr. Kocina found him to be: Ascher's reported activities, the benefits of Ascher's Ritalin medication, and Ascher's normal mental status exams. *See* R. 29–30. Ascher points out that Dr. Kocina expressly considered his ability to drive, his improvement on Ritalin, and his hobbies. *See* R. 87, 92–93, 100, 104–05. Thus, according to Ascher, the ALJ impermissibly played doctor when he rejected Dr. Kocina's CPP limitation based on some of the same evidence.

I disagree. Social security regulations require ALJs to consider the persuasive value of prior administrative medical findings and instruct ALJs to pay particular attention to the supportability and consistency of those findings. *See* §§ 404.1520c, 416.920c. The ALJ adhered to these requirements, finding that, although Asher had some CPP limitations, his demonstrated ability to engage in tasks requiring more than two steps, his improvement in ADHD symptoms with Ritalin, and his lack of concentration issues during exams were inconsistent with a finding limiting him to one- or two-step tasks. Ascher says that the ALJ did not sufficiently explain *how* that evidence was inconsistent with Dr. Kocina's CPP limitation. But most of the activities the ALJ mentioned—buying and selling items online, preparing simple meals, doing part-time carpentry work, driving, performing household chores, and shopping—clearly involve at least three steps. The ALJ also implicitly found that if Ascher needed more help focusing, then providers would have tried different medications or adjusted his dosage more frequently. And if Ascher truly could focus long enough for only

14

one- or two-step tasks, then he likely would not have performed as well as he did during the cognitive assessment or the consultative psychological exam. The ALJ therefore did not err in failing to precisely adopt Dr. Kocina's CPP limitation.

Ascher appears to attempt to chart a different course in his reply brief. Although difficult to follow, he seems to argue that the ALJ *accepted* Dr. Kocina's CPP limitation but impermissibly modified that finding with a less restrictive limitation ("simple one- to two-step tasks" vs. "simple, routine, and repetitive tasks"). *See* Pl.'s Reply 1–6. In other words, he now claims the ALJ made a translation error, not an error in assessing the persuasive value of Dr. Kocina's findings.

Ascher's new argument—to the extent that is his argument—fails for several reasons. First, a party may not raise an argument for the first time in his reply brief. *See Campbell v. Shalala*, 988 F.2d 741, 745 n.3 (7th Cir. 1993) (citing *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 503 (7th Cir. 1992)). Second, Ascher's interpretation as to the persuasive value of Dr. Kocina's findings is refuted by a careful reading of the ALJ's decision. The ALJ said:

> While the undersigned acknowledges Dr. Kocina's concerns for the claimant's ability to understand, remember, learn, complete tasks, concentrate and handle change, the undersigned finds that those concerns are adequately addressed in the residual functional capacity limitations to simple, routine and repetitive tasks, simple work-related decisions, frequent interaction with supervisors and occasional interaction with coworkers.

R. 29–30. The qualifying language suggests that the ALJ was mostly, but not all the way, on board with Dr. Kocina's opined CPP limitation; that is, he didn't fully agree with it. This reading is consistent with the ALJ finding the opinion *somewhat* persuasive. Third, it's unclear whether there's a material difference between "simple, one- to two-step tasks" and "simple, routine, and repetitive tasks." Ascher says that the former limitation is equivalent to a reasoning level of one, while an individual subject to the latter limitation may be capable of

15

a higher level of reasoning.³ He cites several courts that have adopted this interpretation, but the Seventh Circuit is not one of them. In fact, in *Terry v. Astrue*, the Seventh Circuit suggested that a limitation to "simple, unskilled work" did not necessarily conflict with reasoning level three. 580 F.3d 471, 475, 478 (7th Cir. 2009).

\* \* \*

In sum, the ALJ adequately accounted for Ascher's CPP limitations. The ALJ limited Ascher to simple, routine, and repetitive tasks based on the objective medical evidence, Ascher's activities, the benefit Ascher received from stimulant medication, and the prior administrative medical findings and medical opinions. In arriving at that RFC assessment, the ALJ did not address only evidence that supported his finding, the ALJ built a logical bridge from the evidence to his conclusion, and the ALJ sufficiently explained why he did not fully adopt the reviewing psychologist's finding that Ascher was limited to simple one- to two-step tasks. Substantial evidence therefore supports the mental RFC assessed by the ALJ.

## CONCLUSION

For all the foregoing reasons, I find that substantial evidence supports the ALJ's decision and that Ascher has not demonstrated that the ALJ committed reversible error in denying Ascher's disability claim. I therefore **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 20th day of February, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

---

³ The three jobs the ALJ listed at step five require a reasoning level of two.